Eric Nielson #5327
Laura Nielson #15008
G. ERIC NIELSON & ASSOCIATES
4790 S. Holladay Blvd.
Holladay, Utah 84117
Phone: (801) 424-9088
Fax:    (801) 438-0199
ericnielson@ericnielson.com
lauranielson@ericnielson.com

*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT,
DISTRICT OF UTAH, CENTRAL DIVISION**

| | |
|---|---|
| SUBRHA B. and O.B.,<br><br>Plaintiffs,<br><br>vs.<br><br>CITADEL ENTERPRISE AMERICAS LLC EMPLOYEE GROUP BENEFITS PLAN and CITADEL ENTERPRISE AMERICAS LLC AND AFFILIATED EMPLOYERS,<br><br>Defendants. | **COMPLAINT**<br><br>Case No. 2:22-cv-00823-HCN<br><br>Judge Howard C. Nielson, Jr. |

**COME NOW** Subrha B. and O.B., on their own behalf collectively, individually, and through their undersigned counsel, complains and alleges against the above-captioned defendants as follows:

**PARTIES, JURISDICTION, AND VENUE**

1.  Plaintiff Subrha B. ("Subrha") is a natural person residing in Edgewater, New Jersey. They are covered by a self-funded plan, Citadel Enterprise Americas LLC Employee Group

1

Benefits Plan ("the Plan"), provided through Subrha's employer, Citadel Enterprise Americas LLC.

2. Plaintiff O.B. is a resident of Edgewater, New Jersey. As a beneficiary of her father's health insurance plan, she received treatment at Evoke Cascades ("Evoke"), a licensed intermediate behavioral health treatment facility, from August 6, 2018 through October 20, 2018.

3. The Plan is an employee benefit plan governed by the Employment Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §1001, et. seq.

4. This Court has jurisdiction over this matter and venue is appropriate pursuant to 29 U.S.C. §1132(e)(2) and 29 U.S.C. § 1391(c) because the appeals were written by a company located in Salt Lake City, Utah.

5. Plaintiffs seek payment of O.B.'s denied claims from August 6, 2018 through October 20, 2018, pursuant to 29 U.S.C. §1132(a)(1)(B).

6. Plaintiffs seek injunctive relief pursuant to 29 U.S.C. §1132(a)(3) and pursuant to the Mental Health Parity and Addiction Equity Act of 2008 ("the Parity Act").

7. Plaintiffs also seek an award of prejudgment interest and attorney's fees pursuant to 29 U.S.C. §1132(g).

## FACTUAL BACKGROUND

8. O.B. has struggled with a history of autism spectrum disorder, attention-deficit/hyperactivity disorder, social anxiety disorder, major depressive disorder, and obsessive compulsive disorder.

9. After attempts at lower levels of care, O.B. was admitted to Evoke on August 6, 2018.

## PRE-LITIGATION APPEAL PROCESS FOR EVOKE

8. Claims were submitted to the Plan by the Plaintiffs for O.B.'s treatment at Evoke.

9. In December of 2018, BlueCross BlueShield of Illinois ("BCBSIL"), the claims administrator for the Plan, sent denial Explanation of Benefits ("EOB") for O.B.'s treatment at Evoke, stating, in part:

> **This service is excluded under your Health Care Plan. Please refer to your benefit booklet for specific coverage information and exclusions under your contract.**

10. On May 9, 2019, Plaintiffs submitted a Level One Member Appeal.

11. In this appeal, Plaintiffs outlined that O.B.'s treatment at Evoke is an analogous level of care to their intermediate medical health benefits, such as skilled nursing facility services or rehabilitative services.

12. Plaintiffs advised BCBSIL that Evoke meets the Plan's definition of provider and of behavioral healthcare practitioner. Plaintiffs also advised that the Plan's supposed exclusion was trying to equate Evoke with a boot camp or summer adventure camp, but Evoke is not a summer adventure camp. Evoke is a licensed program that utilizes therapeutic interventions including individual psychotherapy, family therapy, daily group therapy, and dialectical behavioral therapy.

13. The family further outlined that BCBSIL was not applying a similar treatment limitation to mental health and substance use disorder benefits as they were to medical health benefits by denying O.B.'s claims due to highly restrictive definitions and ambiguity in their plan documents.

14. In fact, the family expressed concern in their appeal about BCBSIL applying non-quantitative treatment limitations ("NQTLs"), the same kind that were prohibited by MHPAEA. Plaintiffs advised that, per MHPAEA, BCBSIL could not impose restrictions, requirements, or standards for administering behavioral health benefits that were more intensive than those for comparable medical or surgical services.

15. On June 5, 2019, BCBSIL responded to the appeal upholding the denial, stating, in part:

> **...According to the Member's Health Care Benefit Plan on page 112 under Exclusions – What is Not Covered, it states:**
> **"Expenses for the following are not covered under your benefit program:**
> **Speech Therapy when rendered for the treatment of psychosocial speech delay, behavioral problems (including impulsive behavior and impulsivity syndrome), attention disorder, conceptual disability or mental disability, except as may be provided under this benefit booklet for Autism Spectrum Disorder(s).**
> **Please also refer to page 111 under Exclusions – What is Not Covered, it states:**
> **" Services or supplies received during an Inpatient stay when the stay is primarily related to behavioral, social, maladjustment, lack of discipline or other antisocial actions which are not specifically the result of Mental Illness. This does not include services or supplies provided for the treatment of an injury resulting from an act of domestic violence or a medical condition (including both physical and mental health conditions).**

16. The family exhausted their pre-litigation administrative appeals process with BCBSIL.

# FIRST CAUSES OF ACTION

**(Claim for Benefits Under 29 U.S.C. §1132(a)(1)(B)) and Claim for Equitable Relief Pursuant to 29 U.S.C. §1132(a))**

17. ERISA imposes higher-than-marketplace standards on the Plan and other ERISA fiduciaries. It sets forth a special standard of care upon a plan fiduciary, namely that the administrator discharges all plan duties solely in the interest of the participants and beneficiaries of the plan and for the exclusive purpose of providing them benefits. 29 U.S.C. §1104(a)(1).

18. ERISA also underscores the particular importance of accurate claims processing and evaluation by requiring that plan administrators provide a "full and fair review" of claim denials. 29 U.S.C. §1104(a)(1)(D) and §1133(2).

19. The Plan's actions or failures to act constitute a breach of its fiduciary duties to the B. Family under 29 U.S.C. §1104 and §1133 in the following ways: 1) by failing to set forth the specific reasons for O.B.'s claim denial, written in a manner calculated to be understood by the Plaintiffs; 2) by failing to provide a "full and fair review," as anticipated in ERISA's claims processing regulations, of the denial of the O.B.'s claim; 3) by developing and relying upon internal practices and policies that improperly restricted coverage in contravention of Plaintiffs' health insurance plans, ERISA, and the Parity Act; and 4) by failing to discharge all plan duties solely in the interest of the participants and beneficiaries of the plan and for the exclusive purpose of providing them benefits.

# SECOND CAUSE OF ACTION

**(Claim for Violation of the Parity Act Under 29 U.S.C. §1132(a)(3))**

20. The Parity Act is incorporated into ERISA and is enforceable by ERISA participants and beneficiaries as a requirement of both ERISA and the Parity Act.

21. The Parity Act requires that if a group health plan provides both medical and surgical benefits as well as mental health or substance use disorder benefits, then it may not apply any "treatment limitation to mental health or substance use disorder benefits in any classification that is more restrictive than the predominant ... treatment limitation of that type applied to substantially all medical/surgical benefits in the same classification." 29 C.F.R. § 2590.712(c)(2)(i) (amended Jan. 13, 2014); *see also* IFRs Under the Parity Act, 75 Fed. Reg. at 5413.

22. The Parity Act also requires that if a plan "provides mental health or substance use disorder benefits in any classification of benefits..., mental health or substance use disorder benefits must be provided in every classification in which medical/surgical benefits are provided." 29 C.F.R. § 2590.712(c)(2)(ii).

23. Impermissible nonquantitative treatment limitations under the Parity Act include, but are not limited to, medical management standards limiting or excluding benefits based on medical necessity, restrictions based on geographic location, facility type, provider specialty, and other criteria that limit the scope or duration of benefits for mental health or substance use disorder treatment. 29 C.F.R. §2590.712(c)(4)(ii)(A) and (H).

24. Comparable benefits offered by the Plan for medical/surgical treatment analogous to the benefits the Plan restricted for O.B.'s treatment include sub-acute inpatient treatment settings such as skilled nursing facilities, inpatient hospice care, and rehabilitation facilities. For none of these types of treatment does the Plan restrict coverage of medical/surgical conditions based on

medical necessity, geographic location, facility type, provider specialty, or other criteria in the manner the Plan restricted coverage of treatment for O.B. at Evoke.

25. Specifically, the Plan's reviewers utilized internal processes and procedures that may have placed a limitation on the scope of services available for intermediate behavioral health care, while not limiting the scope of services available for intermediate medical or surgical benefits.

26. When the Plan receives claims for intermediate-level treatment of medical and surgical conditions, they provide benefits and pay the claims as outlined in the terms of the Plan based on generally accepted standards of medical practice. The Plan evaluated O.B.'s mental health claims using exclusionary criteria that deviate from generally accepted standards of medical practice. This process resulted in a disparity because the Plan denied coverage for mental health benefits when the analogous levels of medical or surgical benefits would have been paid.

27. In this manner, the Defendants violate 29 C.F.R. §2590.712(c)(4)(i) because the terms of the Plan and the internal medical necessity requirements utilized by the Plan, as written or in operation, use processes, strategies, standards, or other factors to limit coverage for mental health or substance use disorder treatment in a way that is inconsistent with and more stringently applied, than the processes, strategies, standards or other factors used to limit coverage for medical/surgical treatment in the same classification.

28. The violations of the Parity Act by the Plan give the Plaintiffs the right to obtain appropriate equitable remedies as provided under 29 U.S.C. §1132(a)(3) including, but not limited to:

29. A declaration that the actions of the Defendants violate the Parity Act;

30. An injunction ordering the Defendants to cease violating the Parity Act and requiring compliance with the statute;

31. An order requiring the reformation of the terms of the Plan and the medical necessity criteria utilized by the Defendants to interpret and apply the terms of the Plan to ensure compliance with the Parity Act;

32. An order requiring disgorgement of funds obtained by or retained by the Defendants as a result of their violations of the Parity Act;

33. An order requiring an accounting by the Defendant of the funds wrongly withheld by the Defendants from participants and beneficiaries of the Plan as a result of the Defendants' violations of the Parity Act;

34. An order based on the equitable remedy of surcharge requiring the Defendants to provide payment to the Plaintiffs as make-whole relief for their loss;

35. An order equitably estopping the Defendants from denying the Plaintiffs' claims in violation of the Parity Act; and

36. An order providing restitution from the Defendants to the Plaintiffs for their loss arising out of the Defendants' violation of the Parity Act.

37. In addition, Plaintiffs are entitled to an award of prejudgment interest pursuant to U.C.A.

38. §15-1-1, and attorney fees and costs pursuant to 29 U.S.C. §1132(g)

**RELIEF**

39. WHEREFORE, the Plaintiffs seek relief as follows:

40. Judgment in the total amount that is owed for O.B.'s medically necessary treatment at Evoke under the terms of the Plan, plus pre- and post-judgment interest to the date of payment;

41. Appropriate equitable relief under 29 U.S.C. §1132(a)(3) as outlined in Plaintiffs' Second Cause of Action;

42. Attorney fees and costs incurred pursuant to 29 U.S.C. §1132(g); and

43. For such further relief as the Court deems just and proper.

RESPECTFULLY SUBMITTED this 3rd day of January, 2023.

> G. ERIC NIELSON & ASSOCIATES
>   /s/ Laura Nielson
> Laura Nielson
>
> *Attorney for Plaintiff*